**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUISINIO MOLINA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHOICE HOTELS INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 3:25-cv-06827-RS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: January 22, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg<br>Place: Courtroom 3, 17th Floor<br><br>Action Filed: August 12, 2025 |

# TABLE OF CONTENTS


**PAGE(S)**

INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 4

I. Plaintiff Suffered a Concrete Injury When Defendant Unlawfully Disclosed His Guest Record Information ........ 4

II. Plaintiff Sufficiently States a CIPA Claim (Count I) ........ 9

A. Choice Hotels is Derivatively Liable Because It Aided Meta's Violations ........ 10

B. The Party Exception Does Not Apply Because Meta Utilized The Intercepted Information For Its Own Purpose ........ 12

C. Meta Intercepted The "Contents" Of Plaintiff's Communications ........ 13

D. Plaintiff Sufficiently Alleges Interception "In Transit" ........ 15

III. Plaintiff States an Invasion of Privacy Claim under the California Constitution ........ 17

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Augustine v. Great Wolf Resorts, Inc.*
2024 WL 3450967 (S.D. Cal. July 18, 2024) ..... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 3, 4

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ..... 3

*Batts v. Gannett Co.*,
2023 WL 3143695 (E.D. Mich. Mar. 30, 2023) ..... 6

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..... 19

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ..... 14

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 14, 16

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..... 4

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ..... 2

*Clausing v. San Francisco Unified School District*,
271 Cal. Rptr. 72 (Ct. App. 1990) ..... 20

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) ..... 4

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ..... 10, 13

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ..... 7, 8

*Crano v. Sojern, Inc*,
2025 WL 2689267 ..... 5, 8, 15

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..... 1, 2

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 .......... 16

*Deivaprakash v. Condé Nast Digit.*,
2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) .......... 2

*DellaSala v. Samba TV, Inc.*,
2025 WL 303069 (N.D. Cal. Oct. 30, 2025) .......... 4

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 16

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 1, 7

*Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 10, 17

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 5

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 12

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 .......... 16

*Feldman v. Star Tribune Media Company LLC*,
2023 WL 2388381 (D. Minn. Mar. 7, 2023) .......... 5

*Frasco v. Flo Health,*
*349 F.R.D. 557, 568-71 (N.D. Cal. 2025)*. .......... 2, 7, 18

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 3, 7

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 3, 7, 17

*Gaige v. Exer Holding Co.*,
2025 WL 559719 .......... 5

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 5, 12

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......... 4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 11, 13

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022)........................................................................ 19

*Healthcare Litig. ("In re* Meta Pixel")
647 F. Supp. 3d 778 (N.D. Cal. 2022)..................................................................... 14, 15

*Heiting v. Athenahealth, Inc.*
2024 WL 3761294 (C.D. Cal. July 29, 2024) ............................................................. 13

*Heiting v. Taro Pharms. USA Inc.*
728 F. Supp. 3d 1112 (C.D. Cal. 2024)........................................................................ 17

*Helgund v. Atkin Cnty.*,
871 F.3d 572 (8th Cir. 2017)........................................................................................ 5

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)......................................................................... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)................................................................................. passim

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ........................................................................................ 5

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014).............................................................. 6

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................................................................ 19

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016) ........................................................................................ 6

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)................................................................... 17, 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022)................................................................................ 9

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024)..................................................................................... 7, 8

*Katz-Lacabe v. Oracle America, Inc.*,
668 F.Supp.3d 928 (N.D. Cal. Apr. 6, 2023) ....................................................... 5, 13, 14

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .................................................................. 12

*Kishnani v. Royal Caribbean Cruises, Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025)................................................................ 7

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 10, 17

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 17

*Lin v. Crain Communications, Inc.*,
2020 WL 248445 (E.D. Mich. Jan. 16, 2020) ........ 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 3

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 ........ 15, 16

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 ........ 12

*Mikulsky v. Bloomingdale's LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ........ 15

*Mikulsky v. Bloomingdale's LLC*,
2025 WL 1718225 (9th Cir. 2025) ........ 15, 16

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 3

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ........ 2, 7, 18

*Padron v. Lara*,
2018 WL 2213462 (E.D. Cal. May 11, 2018) ........ 18

*Patel v. City of Los Angeles*,
738 F.3d 1058 (9th Cir. 2013) ........ 7, 20

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ........ 5

*Petris v. Sportsman's Warehouse, Inc.*,
736 F.Supp.3d 260 (W.D. Pa. June 3, 2024) ........ 4

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ........ 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 3

*R.C. v. Walgreens Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 6

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 ........ passim

*Safe Air Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ........ 3

*Salazar v. National Basketball Association*,
2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ........ 6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. Sept. 27, 2021) ........ 10

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 2, 16

*Smith v. Rack Room Shoes*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 11

*Smith v. Yeti Coolers*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 11

*Snyder v. G6 Hospitality LLC*
2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) ........ 8, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) ........ 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4, 5

*Valenzuela v. Keurig Green Mtn., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 10

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. Aug. 14 2023) ........ 16, 17

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 10, 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 12

**STATUTES**

18 U.S.C. § 2710(b)(1) .......... 6

Cal. Civ. Code § 53.5 .......... passim

Cal. Civ. Code § 53.5(a) .......... 1, 2, 18

Cal. Civ. Code § 53.5(c) .......... 9, 18

Cal. Pen. Code § 631 .......... 2, 10

Cal. Pen. Code § 631(a) .......... 10, 13, 14

**RULES**

Fed. R. Civ. P. 8(a)(2) .......... 3

Fed. R. Civ. P. 12(b)(1) .......... 1, 2, 3

Fed. R. Civ. P. 12(b)(6) .......... 3

**OTHER AUTHORITIES**

Senate Bill 1194 .......... 1

## INTRODUCTION

"When Californians leave their homes to . . . stay at lodging establishments throughout their state, they desire assurances that these businesses will respect their privacy and safeguard their personal information from improper disclosure." California Senate Bill 1194 (Sept. 27, 2018), § 1(g).[1] And so California law requires that any "hotelkeeper . . . shall not disclose . . . all or any part of a guest record . . . by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a). Yet that is exactly what Defendant Choice Hotels International, Inc. ("Defendant") did. It installed the Facebook Tracking Pixel on its hotel booking website and disclosed guest records to Meta Platforms, Inc. *See* ECF No. 1 ("Compl.") ¶¶ 4, 8, 51–67. Every time consumers filled out online forms to book a room at a Choice Hotel establishment, the Facebook Tracking Pixel intercepted those communications and disclosed them to Meta. In the process, Meta learned *who* stayed *where*, *when*, and *how* many adults and *how* many children accompanied them. Compl. ¶¶ 8, 38, 52–53, 64, 85. In the process, Defendant violated the California Invasion of Privacy Act ("CIPA") §§ 630, *et seq.* and the California Constitution. Rather than correct its privacy practices, Defendant instead moves to dismiss Plaintiff's Complaint. *See generally* ECF No. 13 ("MTD"). However, Defendant raises numerous arguments that have consistently been rejected by courts within this Circuit.

*First*, Defendant argues that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because "guests do not have a reasonable expectation of privacy to hotel records." MTD at 1. However, "CIPA codifies a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1192 (S.D. Cal. 2024) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)). Plaintiff has plainly described that he visited Defendant's website, submitted personal information, and, without his consent, had his private information disclosed to Meta. *See* Compl. ¶¶ 8, 51, 64, 74, 82, 92. These allegations are sufficient to allege standing. *See, e.g.*, *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 836 (E.D. Cal. 2025) (finding allegations that defendants disclosed plaintiffs' personal information

[1] leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180SB1194.

to third parties adequate to establish standing); *Deivaprakash v. Condé Nast Digit.*, 2025 WL 2541952, at *4 (N.D. Cal. Sept. 4, 2025) (same); *Frasco*, 349 F.R.D. at 580 (same).

*Second*, Defendant argues that Plaintiff cannot state a claim because the Complaint fails "to adequately allege any third-party violations of CIPA for which Choice Hotels could be derivatively liable." MTD at 1. Not so. It is well-settled that the surreptitious implementation of third-party trackers on websites violates both the second and third prongs of section 631(a) of CIPA. *See Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053–54 (N.D. Cal. 2025) (finding the installation of third-party trackers on defendant's website violative of the second prong of section 631(a)); *D'Angelo*, 726 F. Supp. 3d at 1200 (proclaiming the third prong of section 631(a) was violated when third-party used plaintiffs' communications for monetary gain). Here, the Complaint provides an extensive, detailed description of Meta's wrongdoings. *See* Compl. ¶¶ 8, 27, 36–40, 50–67. As such, Plaintiff has properly outlined the predicate violations to hold Defendant derivatively liable. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing.").

Lastly, Defendant is mistaken in stating that "Plaintiff does not have a reasonable expectation of privacy" in his hotel guest records. On the contrary, Plaintiff has an expectation of privacy enumerated by the California Legislature. *See* Cal. Civ. Code § 53.5(a). As such, he "had a reasonable basis to believe that h[is] communications were 'confidential'" under California Civil Code § 53.5. *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024), *adopted as modified*, 2024 WL 4474491.

For these reasons, and those discussed more thoroughly below, Defendant's motion to dismiss should be denied in full.

## LEGAL STANDARD

When a plaintiff lacks Article III standing to bring a suit, the case must be dismissed under Rule 12(b)(1). *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Under Article III, a plaintiff must "have suffered an 'injury in fact' that is both 'concrete and particularized.'"

*Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Concrete harms include tangible harms as well as intangible harms, so long as an intangible harm has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in America courts, such as reputational harms, disclosure of private information, and intrusion upon seclusion." *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *6 (N.D. Cal. Sept. 16, 2025) (internal quotations omitted).

There are two different types of jurisdictional attacks under Rule 12(b)(1): facial and factual. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *2 (N.D. Cal. July 14, 2025). In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In these cases, the court "need not presume the truthfulness of the plaintiff's allegations." *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *3 (N.D. Cal. Aug. 29, 2025) (quoting *Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A facial attack, on the other hand, occurs when a "challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Motorola Mobility LLC*, 2025 WL 1939957, at *2. When "resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor." *Id.*; *see also Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 861 (S.D. Cal. 2023) (same).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claims showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate only when the complaint "fails[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating the complaint, the court must accept all of plaintiff's material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When dismissal is appropriate, the court should grant leave

to amend the complaint unless the "complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. Plaintiff Suffered a Concrete Injury When Defendant Unlawfully Disclosed His Guest Record Information

Defendant asserts that Plaintiff "has not alleged a concrete harm, and therefore, dismissal is required." MTD at 5. That is wrong.

To establish standing under Article III, "a plaintiff must show (i) that he suffered an injury in fact that is concrete . . . (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *DellaSala v. Samba TV, Inc.*, 2025 WL 303069, at *2 (N.D. Cal. Oct. 30, 2025) (internal quotations omitted). Defendant only challenges the first element, that Plaintiff "has not alleged a concrete harm." MTD at 5. The harm suffered by the plaintiff must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F.Supp.3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Ninth Circuit is in accord, acknowledging that, even before *TransUnion*, "[the harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another." *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1117-19 (9th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (internal citations omitted). Because those privacy harms are "well-ensconced in the fabric of American law," intangible harms bearing a close relationship to them "qualify as concrete." *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155–159 (3d Cir. 2022) (internal quotations omitted).

Hotel operators, like Defendants, are prohibited from disclosing the guest records of their

patrons. Cal. Civ. Code § 53.5. Hotel guests who have had their private guest record information disclosed without their consent have suffered a harm akin to intrusion upon seclusion. Nothing more is required to state a harm related to a privacy right. *See Katz-Lacabe v. Oracle America, Inc.*, 668 F.Supp.3d 928, 940 (N.D. Cal. Apr. 6, 2023) (Seeborg, J.) ("As the Ninth Circuit has recognized, invasion of privacy can be a harm in and of itself.") (citing to *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017); *Crano*, 2025 WL 2689267, at *6 (denying motion to dismiss guest records case for lack of standing); *TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Gaige*, 2025 WL 559719, at *2 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted); *see also Feldman v. Star Tribune Media Company LLC*, 2023 WL 2388381, at *5 (D. Minn. Mar. 7, 2023) (noting the "evidently close relationship between Feldman's VPPA claim in this case and the intrusion-upon-seclusion tort as it has been traditionally understood"); *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("a concrete injury for Art. III standing purposes occurs when Google, or any other third party, tracks a person's Internet browser activity without authorization); *Helgund v. Atkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017) ("An individual's control of information concerning her person—the privacy interest [plaintiffs] claim here—was a cognizable interest at common law"); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) (ample precedent recognizes that an individual has an interest in preventing disclosure of their personal information); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff responses that a CIPA violation is a violation of privacy rights and is a sufficiently concrete injury-in-fact. This Court agrees."). Courts from across the country have reached the same conclusion in similar contexts. For example, the Video Privacy Protection Act and Michigan's Preservation of Personal Privacy Act prohibit companies from disclosing information related to consumers' video viewing materials and subscriptions. *See* 18 U.S.C. § 2710(b)(1); Mich. Compl. Laws § 445.1712. Under

both statutes, both before and after *TransUnion*, courts have uniformly held that unlawful disclosures constitute concrete injuries sufficient to confer Article III standing. *See*, *e.g.*, *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."); *Batts v. Gannett Co*., 2023 WL 3143695, at *3 (E.D. Mich. Mar. 30, 2023) ("[T]he Supreme Court's recent *TransUnion* case does not alter the settled matter of a PPPA violation satisfying Article III standing requirement for a concrete and particularized injury in fact."); *Salazar v. National Basketball Association*, 2023 WL 5016968, at *5 (S.D.N.Y. Aug. 7, 2023) (collecting cases); *Lin v. Crain Communications, Inc.*, 2020 WL 248445, at *6 (E.D. Mich. Jan. 16, 2020) (collecting cases).

Here, Plaintiff does not allege an injury stemming from a bare statutory violation, but rather, a concrete injury stemming from the unlawful disclosure of his guest record information. Nonetheless, Defendant asserts a host of arguments, none of which warrant dismissal here.

***First***, Cal. Civ. Code § 53.5 protects guest record information from disclosure, which includes "any record that identifies an individual guest . . . including, but not limited to, their name…or other unique identifying number." Defendant concedes that Plaintiff alleges his "location, hotel name, the dates of the stay, and the number of persons in Plaintiff's party" were unlawfully disclosed to Meta. MTD at 5. Accompanying each interception was Plaintiff's Facebook ID, which is a unique code that Facebook uses to identify its account holders. Compl. ¶ 53. Plaintiff further describes how Meta discerns the identity of users on Defendant's Website in depth and how such interceptions occur. *See id.* ¶¶ 53–66. The transmission of hotel guests' Facebook IDs to Meta is no different to the transmission of those guests' names, and at the very least, is a unique identifying number. *See R.C. v. Walgreens Co.*, 733 F. Supp. 3d 876, 890 (C.D. Cal. 2024) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user.") (quoting *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014)). Allegations such as these are more than sufficient for purposes of establishing Article III standing. *See, e.g.*, *Motorola Mobility LLC*, 2025 WL 1939957, at *6 (finding standing because plaintiff did not merely "describe[] data that Motorola *could have* collected") (emphasis in

original); *Haleon US Inc.*, 2025 WL 2494368, at *6 (concluding "that Gabrielli's allegations that Haleon deprived him control of personal information regarding his digital activity and profile are enough to show a concrete injury"); *Frasco*, 349 F.R.D at 580 (finding sufficient standing); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 836 (same). The authority relied upon by Defendant is inapplicable, as it relates to the collection of unprotected information. *See, e.g., Kishnani v. Royal Caribbean Cruises, Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (finding no standing because "there is no legally protected privacy interest in IP addresses," and the plaintiff did "not allege that the Website collected his biographical information.").

***Second***, Defendant relies upon outdated and irrelevant case law for its assertion that "guests lack any privacy interest of their own in [a] hotel's records." MTD at 6 (quoting *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013)). California Civil Code § 53.5, which prohibits the disclosure of guest records to third parties, was signed into law by Governor Jerry Brown in 2018. Cal. Civ. Code § 53.5 postdates *Patel* and severely weakens Defendant's proposition regarding Plaintiff's "privacy interest" in his guest records. MTD at 6. Moreover, *Patel* was decided in the context of whether a search of a hotel's records by government actors violated the Fourth Amendment. *Patel*, 738 F.3d at 1062; *see also Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995 (9th Cir. 2023) (narrow ruling that "the *government's* unlawful collection and retention of records alone" does not give rise to standing) (emphasis added). Here, Defendant fails to acknowledge that Plaintiff "had a reasonable basis to believe that h[is] communications were 'confidential' irrespective of whether or not they fall within the definition of 'guest records' under California Civil Code § 53.5." *Mitchell*, 2024 WL 4471772, at *11, *adopted as modified*, 2024 WL 4474491 (cleaned up).

***Third***, Defendant cites out-of-circuit authorities are inapposite because they concern session-replay technologies rather than third-party tracking pixels. *See Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 537 (8th Cir. 2024) ("[T]he companies' websites . . . employed 'session replay' technology"); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 64 (W.D. Pa. 2023) (same). In short, there was no alleged interception of guest record or identifying information by any third party because the data collected by session replay was entirely anonymous. *Jones*,

124 F.4th at 539 ("She doesn't allege that it recorded any of her contact information or even her name."); *Cook*, 689 F. Supp. 3d at 65–66 ("In effect, everything Ms. Cook did on GameStop's website was completely anonymous.").

***Fourth***, Defendant argues that courts "have seemingly rejected" the argument that guest records under Cal. Civ. Code § 53.5 are confidential under CIPA. MTD at 7. However, this has nothing to do with Article III standing. *See Crano v. Sojern, Inc.* 2025 WL 2689267, at *6 (denying motion to dismiss for lack of Article III standing). Although *Snyder v. G6 Hospitality LLC* held that the plaintiff failed to show how "dates of the trip, number of guests, username, etc., constituted guest records," the Court did not dismiss those claims for lack of standing. Moreover, in *Snyder* the plaintiff fell short of demonstrating the function and importance of the Facebook ID. 2025 WL 1254382, at *4 (C.D. Cal. Apr. 14, 2025). There, the court stated:

> Plaintiff argues that a Facebook ID constitutes a "guest record," but does not explain how Defendant shares this information with Meta. The only argument that Plaintiff makes as to any identifying unique number is [sic] it relates to the Facebook ID, which Plaintiff alleges is tied to the particular search request. Although Plaintiff argues that is the Facebook ID coupled with the particular search that constitutes a "unique identifying number," Plaintiff does not allege or explain that it is not Motel 6 conveying the Facebook ID, or for that matter conveying anything else specified in the statute's list of guest records. Rather, Meta itself appears to already have the unique Facebook ID and nothing is being conveyed to Meta by Motel 6 for the purposes of the statute.

*Id.* at *4 (cleaned up). Here, Plaintiff's allegations do not suffer the same defects, as Plaintiff correctly explains that Defendant sends "activity data" to Meta which includes the "Facebook ID." Compl. ¶ 53. Regardless of whether a user is logged into Facebook or not; the Facebook Tracking Pixel uses the "fr, _fbp, and c_user cookies to link Facebook IDs and corresponding Facebook profiles." Compl. ¶¶ 54–64. The utility of the Facebook ID is that it allows anyone, including Meta, to "easily identify any individual" by name on the platform. Compl. ¶ 53. Although Meta "may already have *access* to a user's Facebook ID, *it is Defendant that conveys this identifier* in tandem with specific hotel stay data, thereby linking the Facebook user to a specific booking event." Compl. ¶ 65 (emphasis added). In essence, Meta gains no utility until Defendant

"transmits both the Facebook ID and the search-related guest information." Compl. ¶ 66. Therefore, the transmission of a user's Facebook ID and stay information is a "guest record" because Meta receives the "name . . . or other unique identifying number" of "an individual guest." Cal. Civ. Code § 53.5(c).

**II. Plaintiff Sufficiently States a CIPA Claim (Count I)**

CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does **any** of the following:

> [i] Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> [ii] Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> [iii] Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> [iv] Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

*See* CIPA § 631(a). It is universally understood that CIPA applies to internet communications. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). *Doe v. Eating Recovery Center LLC* does not alter this common understanding. There, the Court granted the defendant's motion for summary judgment as to the Section 631 claim because the evidence in that particular

case showed that the third-party eavesdropper did not learn the contents of the communications while they were in transit. *Eating Recovery Center LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Notably, while the court had criticism of the statutory language of the CIPA, it did not find that the statute did not apply to internet communications. *Id.* Therefore, the holding in *Eating Recovery Center LLC* is wholly irrelevant to the Court's analysis here.

**A. Choice Hotels is Derivatively Liable Because It Aided Meta's Violations**

Defendant argues that Plaintiff "fails to sufficient allege predicate violations of Section 631 by a third party." MTD at 9 [sic]. That argument ignores Plaintiff's allegations.

The second prong of Section 631(a) prohibits parties from:

> willfully and without consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.

Cal. Pen. Code § 631(a). Accordingly, the second prong of Section 631 has three independent requirements: (1) lack of consent of all parties to a communication; (2) eavesdropping by a third-party nonparticipant; and (3) interception of a communication while in transit. *See, e.g., Valenzuela v. Keurig Green Mtn., Inc.*, 674 F. Supp. 3d 751, 756–58 (N.D. Cal. 2023*); Licea v. Am. Eagle Outfitters, Inc*., 659 F. Supp. 3d 1072, 1081–84 (C.D. Cal. 2023). Section 631(a) shields parties to a communication from liability. *See, e.g., Valenzuela*, 674 F. Supp. 3d at 757; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020); *Saleh v. Nike, Inc*., 562 F. Supp. 3d 503, 518 (C.D. Cal. Sept. 27, 2021). However, "a vendor hired by a website may act as a third-party eavesdropper if they secretly record conversations in real time." *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024). In determining the party status of a website vendor, California courts look to see if the "usage of third-party recordation software can be considered equivalent to having hired a third-party in the first place for purposes of a Section 631(a) analysis." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Courts will pay particular attention to whether the accused eavesdropper intercepted communications for self-use or, comparatively, simply recorded communications for future playback on behalf of one

of the parties. *Compare Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Facebook acquired user communications by causing their browsers to transmit parallel signals . . . that means of interception should not have stripped Facebook of its third-party status."), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself.").

Here, Plaintiff establishes that his protected communications were intercepted in transit through the Meta Pixel. *See* Compl. ¶ 34 ("Meta's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Meta to intercept and collect user activity on those platforms."); Figure 1; ¶ 39 ("[W]hen a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to Meta at the same time as they are being sent to Choice Hotels. Thus, Meta's interception of these communications occurs 'in transit.'"). Plaintiff also alleges that Meta is more than a processing "tool" for Defendant because Meta utilizes the information it intercepts for its own benefit. *See* Compl. ¶ 40 ("After collecting and intercepting this information, Meta processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences. In order to engage in the above-described processing, analysis and assimilation, on information and belief, Meta has to view the information being processed, analyzed and assimilated."). Defendant is aware of this activity, because it is disclosed to Defendant by Meta in Meta's terms. *Id.* ¶ 45 ("Meta confirms in its 'Meta Business Tools Terms,' that it has the capability to use information it collects for purposes other than recording it and conveying it to Defendant."). Such disclosures render Defendant's knowledge argument meritless. *Compare Smith v. Rack Room Shoes*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (finding intent adequately alleged when plaintiff alleged defendant provided a license to copy and process data to third party interceptor), *with Smith v. Yeti Coolers*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) (finding intent not sufficiently alleged where there was no allegation that the defendant was aware of the third parties' use of the data). Further, Choice Hotels knew it was unlawful to aid Meta's interception of Plaintiff's guest record information because it is protected from disclosure by law. Cal. Civ. Code § 53.5.

Additionally, Defendant's reliance on *Martin* and *Garcia* is entirely inapplicable to the current matter. *See* MTD at 10. In each of those cases, no third party was ever affirmatively identified. *See Martin*, 2023 WL 2717636, at *12 ("Plaintiff has not identified the alleged third-party eavesdropper, she provides no description of what the third-party vendor does, what its relationship to Sephora is, how it intercepts Sephora's chat communications, or what it does with that information."); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 ("Plaintiff speculates that the eavesdropper may be WhosOn or SalesForce"). Conversely, here, Plaintiff identifies Meta by name and factually alleges the what, where, how, and why of its actions. *See generally* Compl.

**B. The Party Exception Does Not Apply Because Meta Utilized The Intercepted Information For Its Own Purpose**

Defendant argues that "Plaintiff's vague allegations that Meta 'can' use data for targeted marketing are too general to find that Meta is a third-party wiretapper." MTD at 12. That is wrong.

As an initial matter, whether Meta is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the session replay technical context of the case."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) ("The Court finds here that whether ASI acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery.").

Notwithstanding, CIPA contains an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook*, 956 F.3d at 607. However, "a vendor hired by a website may act as a third-party eavesdropper if they secretly record conversations in real time." *Cody v.*

*Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024). In determining the party status of a website vendor, California courts look to see if the "usage of third-party recordation software can be considered equivalent to having hired a third-party in the first place for purposes of a Section 631(a) analysis." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Courts will pay particular attention to whether the accused eavesdropper intercepted communications for self-use or, comparatively, simply recorded communications for future playback on behalf of one of the parties. *Compare Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Facebook acquired user communications by causing their browsers to transmit parallel signals . . . that means of interception should not have stripped Facebook of its third-party status."), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself.").

Here, Plaintiff has provided detailed factual allegations that Meta sends duplicate transmissions of Plaintiff's communications "to Meta's servers alongside additional information that transcribes the communication's content and the individual's identity." Compl. ¶ 37. Further, Plaintiff has alleged that Meta processes his communications and "assimilates it into datasets like Core Audiences and Custom Audiences." *Id.* ¶ 40; *see also id.* ¶¶ 46–48 (stating "Meta can and *does* . . .") (emphasis added). This is done for Meta's own purposes. *Id.* ¶ 49. As such, Plaintiff is "correct that the weight of the authority in this Circuit teaches that [Meta] is not a party to Plaintiff['s] alleged communications." *Katz-Lacabe*, 668 F. Supp. 3d at 944 (Seeborg, J.).

Defendant's reliance on *Heiting v. Athenahealth, Inc.* does not save its argument, as that case did not concern the same tracking technology nor did the plaintiff allege that the third party used the intercepted data for its own independent purpose. 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024) (finding plaintiff's "allegations too general and conclusory to support a reasonable inference that Salesforce had the capability to use the communications for any purpose beyond providing it to Defendant.").

**C. Meta Intercepted The "Contents" Of Plaintiff's Communications**

Defendant claims that Plaintiff's communications contained only "nonactionable record

information." MTD at 13. That is wrong.

CIPA § 631(a) prohibits the unauthorized disclosure of the contents of communications. Cal. Penal Code § 631(a). As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). "Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act,…and [u]nder the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Byars v. Goodyear Tire & Rubber Co.,* 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (internal citations omitted). "[C]ontent" includes "the names of buttons clicked," *See In re Meta Pixel*, 647 F. Supp. 3d at 795, along with "search queries" and "the particular document" requested. *See Brown v. Google LLC*, 2023 WL 5029899, at *15 (N.D. Cal. Aug. 7, 2023); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication."). "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 605 (9th Cir. 2020); see also *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted). Moreover, this Court has already endorsed the position that information such as a person's "name, date of birth, and medical condition," qualify as "content" under the CIPA. *Katz-Lacabe*, 668 F.Supp.3d at 945 (Seeborg, J.).

Here, Plaintiff alleges that the contents of his communications were intercepted by Meta. For example, when consumers, including Plaintiff, entered their "guest record" information (including the dates and destination of their trip) through Defendants' Website, Defendants assisted Meta in intercepting the contents of those communications. Compl., Figure 1. Under California law, such information is the "content" of the communication, as opposed to mere record information, because it is the "intended message of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795; *see also Revitch*, 2019 WL 5485330, at *1. Each of these

interceptions is tethered to a unique Facebook ID, which Meta uses to identify its account holders.

Defendants' argument that such information is merely "record" information is contrary to California law, as it "misunderstands the difference between content and record information." *M.G.*, 2024 WL 4219992, at *4. The hotel search options Plaintiff chose divulged his "personal interests, queries, and habits." *Id.* (citing *In re Facebook*, 956 F.3d at 605). When booking a room through the Choice Hotels website, the site requires consumers like Plaintiff to "enter their destination, the dates of their stay, the number of adults, and the number of children." Compl. ¶ 25. Consumers also input their "desired property" in addition to their personal details. *Id.* ¶ 26. This user-generated information is intercepted by Meta. *Id.* ¶ 8; *see also* Fig. 1. Defendant's argument that such information is mere record information has already been rejected by other courts based upon similar facts. *See Snyder*, 2025 WL 1254382, at *5 ([T]he Complaint alleges that the information was from the user and the specific search was added by the user . . . . Plaintiff adequately pleads that the information allegedly transmitted was 'content' for the purposes of the statute."); *Crano*, 2025 WL 2689267, at *6 ("Sojern's argument that the information at issue was 'record information' rather than the contents of Plaintiff's communications is likewise unavailing."). All of the authority relied upon by Defendant is distinguishable. For example, Defendant's reliance on *Augustine v. Great Wolf Resorts, Inc.* is inapplicable because that case involved session replay technology which merely aggregates anonymous data. 2024 WL 3450967, at *2 (S.D. Cal. July 18, 2024). *King v. Hard Rock Café Int'l (USA), Inc.* is similarly, inapplicable due to its reliance on *Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024)), which the Ninth Circuit overturned. *See Mikulsky v. Bloomingdale's LLC*, 2025 WL 1718225, at *1 (9th Cir. 2025).

**D. Plaintiff Sufficiently Alleges Interception "In Transit"**

Defendant also claims that Plaintiff has not sufficiently alleged that his communications were intercepted "while in transit." MTD at 14–16. Contrary to this contention, Plaintiff has alleged in detail that Meta intercepted his communications in transit:

> An example illustrates the point. Take an individual who navigates to https://www.choicehotels.com/ and enters their trip details (i.e., the location, the hotel name, the dates of their stay, and the number of

> persons in their party). Once the individual enters in the information, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Because Choice Hotels utilizes the Facebook Tracking Pixel, Meta's embedded code, written in JavaScript, sends secret instructions back to the individual's browser or mobile phone, without alerting the individual that this is happening. Meta causes the browser to secretly and simultaneously duplicate the communication with Choice Hotels, transmitting it to Meta's servers alongside additional information that transcribes the communication's content and the individual's identity.
>
> In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to Meta at the same time as they are being sent to Choice Hotels. Thus, Meta's interception of these communications occurs "in transit."

Compl. ¶¶ 37, 39. These allegations are sufficient because Plaintiff sets forth the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. No additional allegations are required. *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F.Supp.3d 969, 1078-79 (C.D. Cal. Aug. 14 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *D'Angelo*, 2023 WL 7006793, at *8; *Goodyear Tire & Rubber Co.*, 654 F.Supp.3d at 1027; *Bloomingdale's, LLC*, 2025 WL 1718225, at *1 ("The complaint sufficiently stated facts to allege . . . while the same [was] in transit"); *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement.") (quoting *Esparza*, 2024 WL 559241, at *3)); *M.G.*, 2024 WL 4219992, at *4 ("M.G. alleges that Google simultaneously intercepted class members' data in real time by using embedded Google Analytics Code . . . . Thus, M.G. has alleged real-time interception of users' information."); *Capital One Fin. Corp.*, 768 F. Supp. 3d at 1053–54 ("Because these trackers allegedly recorded Plaintiffs' activities for marketing and tracked Plaintiffs' activities and personal information, Plaintiffs plausibly allege that Defendant intercepted the communications while they were in transit."); *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d 969, 978–79 (C.D. Cal. 2023) (same).

Defendant's cited authorities are distinguishable. First, *Eating Recovery Center* was decided on a motion for summary judgment, not the pleading stage. *Eating Recovery Center*, 2025 WL 2971090, at *1. At this stage, all reasonable inferences should be drawn in Plaintiff's favor. *See Motorola Mobility LLC*, 2025 WL 1939957, at *2. Next Defendant cites a litany of cases in which conclusory allegations were shut down. In *Heiting v. Taro Pharms. USA Inc.*, the plaintiff "merely restate[d] the statutory language" without providing any factual allegations. 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024). Plaintiff's allegations provide descriptive detail as to how communications are intercepted while in transit. *See* Compl. ¶¶ 36–39. In sum, Plaintiff's pleadings are not conclusory. Rather, Plaintiff "provide[s] fair notice to Defendant[] of when they believe [Meta] intercepts their communications." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). This is in stark contrast to the authority relied upon by Defendant, much of which does not concern the use of the same tracking technology at issue here. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) ("Plaintiffs' allegations that 'the third party . . . secretly intercept[s] in real time . . . is conclusory and does not allege specific facts as to how or when the interception takes place."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (conclusory pleading did not allege how messages in chat feature on website were intercepted). Lastly, Defendant's fixation Plaintiff's allegation that Meta processes, analyzes, and assimilates communications "after collecting and interpreting" the information fails. MTD at 15–16. Plaintiff specifically alleges that Meta is sent transmissions "alongside additional information that transcribes the communication's content and the individual's identity." Compl. ¶ 37. The fact that Meta continues to utilize and organize intercepted information after receiving and interpreting it has no bearing on the "in transit" requirement, as Plaintiff alleges that Meta "viewed and used Plaintiff and Class Members' communications that it intercepted via the Facebook Tracking Pixel." *Id.* ¶ 40.

## III. Plaintiff States an Invasion of Privacy Claim under the California Constitution

Defendant contends Plaintiff does not sufficiently allege an invasion of privacy claim under the California Constitution because the alleged breach "is not highly offensive or an egregious breach of social norms as a matter of law." This argument fails.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. As a matter of law, Plaintiff possessed "a reasonable basis to believe that h[is] communications were 'confidential'" under California Civil Code § 53.5." *Mitchell*, 2024 WL 4471772, at *11, *adopted as modified*, 2024 WL 4474491; *see also Frasco*, 349 F.R.D. at 582 ("[A] reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms") (internal quotations omitted). This includes basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Although "routine collection of personally identifiable information as part of electronic communications" is unlikely to be highly offensive, the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1233 (C.D. Cal. Mar. 2, 2017). Here, Plaintiff's legally protected privacy interest is bolstered by the fact that the information disclosed by Defendants is specifically protected from disclosure under Cal. Civil Code § 53.5. California law mandates that "guest record" information is confidential. Indeed, Cal. Civil Code § 53.5(a) provides that an "owner or operator of an inn, hotel, motel, lodginghouse, or other similar accommodations[] … shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." *See also* Cal. Civil Code § 53.5(c) ("'Guest record' for purposes of this section includes any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee[.]"). Cal. Civil Code § 53.5 was borne out of the State Legislature's concerns that:

> [p]rotecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.
>
> Therefore, it is the intent of the Legislature to further Californian's right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for

the intended purposes and not improperly disclosed.

Compl. ¶ 20.

Here, Plaintiff not only alleges the disclosure of PII, but also protected "guest record" information. Defendants' argument that Plaintiff "does not allege any facts showing that Meta ever received any information that he or anyone else made a booking and became a 'guest,'" ignores the allegations in Plaintiff's Complaint. *See* Compl. ¶ 7 ("Plaintiff has booked several reservations through the Website, most recently in May 2025. In order to book his stays, Plaintiff visited the Website, where he input a destination and the dates of his stay to look for overnight accommodations. Plaintiff selected a room at one of Defendant's California-based locations and completed the checkout process with the understanding that his sensitive trip details would not be shared with third parties such as Meta.."); *see also id.*, ¶ 52 ("For example, as alleged above, when a customer accessed [the Website] and booked their hotel reservation, Defendants' transmitted information relating to the specific customer's trip to Meta."). By disclosing such information, Defendants committed a serious invasion of Plaintiff's and putative class members' protected privacy interest. *See* Compl. ¶ 3.

The authority relied upon by Defendant does not compel a different result. For example, *Hammerling v. Google LLC* did not involve the disclosure of guest records but rather involved data regarding how long users used an app. 615 F. Supp. 3d 1069, 1088–90 (N.D. Cal. 2022) (finding that disclosure of app usage data was not highly offensive). The other cases relied on by Defendant fare no better. In *B.K. v. Eisenhower Med. Ctr.*, it was held that the plaintiffs did "not sufficiently plead that [d]efendant disclosed [p]laintiffs' medical information." 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024). Similarly, *In re iPhone Application Litig.* concerned the disclosure of "device identifier number, personal data, and geolocation information[.]" 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding the disclosure of LinkedIn ID and URL of profile pages was not highly offensive). A common theme of Defendant's cases is that they merely concern the disclosure of anonymized data.

Further, as discussed *supra*, Defendant's reliance on *Patel* is misplaced because that case was decided years before the passage of Cal. Civ. Code § 53.5. *See generally* 738 F.3d 1058.

Even more jarring, *In re Google, Inc. Priv. Policy Litig.* did not involve an invasion of privacy claim under the California Constitution. *See generally* 58 F. Supp. 3d (N.D. Cal. 2024).

Finally, Defendant contends that "the California Constitution . . . does not provide a private right of action for money damages." MTD at 19. Defendant's reading of the Complaint is too narrow. Plaintiff seeks "all relief available for invasion of privacy claims under California's Constitution." Compl. ¶ 95. While Plaintiff concedes that he may not seek monetary damages under California's Constitution, he is entitled to seek injunctive relief. *Clausing v. San Fran. Unified Sch. Dist.*, 271 Cal. Rptr. 72, 79 (Ct. App. 1990) ("[T]he constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction"). Accordingly, Defendant's motion to dismiss Plaintiff's claim on this basis should be denied.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion to dismiss. Should the Court grant any part of Defendant's motion to dismiss, Plaintiff respectfully requests that he be granted leave to file an amended complaint.

Dated: November 24, 2025

By: */s/ Sarah N. Westcot*

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*