**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LUISINIO MOLINA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHOICE HOTELS INTERNATIONAL, INC.,

Defendant.

Case No. 3:25-cv-06827-RS

**PLAINTIFF'S SUPPLEMENTAL BRIEF ADDRESSING *POPA v. MICROSOFT CORP.***

Judge: Honorable Richard Seeborg

## TABLE OF CONTENTS

I. *POPA* INVOLVED ANONYMOUS INFORMATION USED FOR TROUBLESHOOTING .......... 1

II. PLAINTIFF'S ALLEGATIONS INVOLVE PERSONALLY IDENTIFIABLE INFORMATION USED FOR PROFILING AND ADVERTISING .......... 2

III. LOSING THE RIGHT TO CONTROL THE DISSEMINATION OF PERSONAL INFORMATION REMAINS A CONCRETE INJURY .......... 4

IV. CONCLUSION .......... 5

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ........ 3

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ........ 2

*Camplisson v. Adidas Am., Inc.*,
--- F. Supp. 3d ----, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 1, 4

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ........ 1

*De Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ........ 4

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ........ 5

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) ........ 3

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ........ 1

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 5

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 4

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 4, 5

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 2

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 3

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 4, 5

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 3, 5

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 1, 2, 5

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 3

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 4

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2025) ........ 5

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) ........ 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 3

*U.S. Dep't of Just. v. Reporters Comm. For Freedom of Press*,
489 U.S. 749 (1989) ........ 4

**STATUTES**

Cal. Civ. Code § 1798.140(v)(1)(A) ........ 2

On January 15, 2026, the Court entered an Order permitting Plaintiff to submit "a supplemental brief . . . setting forth [Plaintiff's] views as to the relevance and impact of" *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). ECF No. 22. The impact of that decision is minimal at best. As district courts have found in the wake of the Ninth Circuit's decision, *Popa* did not upend settled Ninth Circuit law. *See, e.g.*, *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law—the issue of whether a privacy violation gives rise to an injury-in-fact for purposes of Article III standing is a frequent feature in these cases."); *Camplisson v. Adidas Am., Inc.*, --- F. Supp. 3d ----, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ("Rather than introducing new case law that adds heightened requirements for privacy harms, *Popa* uses the same common law rules discussed above and evaluates the specific facts of that case."); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (explaining that "*Popa* did not disturb" prior Ninth Circuit caselaw). *Popa* simply reaffirmed the principle that "the violation of a statute" alone is not sufficient "to confer Article III standing." *Popa*, 153 F.4th at 792–93. But as noted below, *Popa* involved *anonymous* information that was used for *technical troubleshooting*. Thus, while the plaintiff in *Popa* claimed her privacy was invaded, she could not tie that invasion to any specific privacy harm. Here, Plaintiff's allegations are entirely distinguishable, because Defendant disclosed Plaintiff's private information in an identifiable manner for targeted advertising purposes.

## I. *POPA* INVOLVED ANONYMOUS INFORMATION USED FOR TROUBLESHOOTING

*Popa* involved tracking via "session-replay technology." This technology "allows a business to capture and reproduce customers' interactions with its website," and "[t]he session-replay provider then uses those website communications to recreate website visitors' entire visit to the website." *Id.* at 786 (cleaned up). "A business utilizing this technology can then access useful consumer data, including detailed heat maps of a website that provide information about which elements of a website have high user engagement how far website users scrolled on the website, and the total clicks within a given area of the website." *Id.* The Ninth Circuit likened session-replay technology "to a store

clerk[] observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791.

To be sure, the plaintiff alleged this technology "captured" the specific "product" the user viewed on the website—*i.e.*, the user's browsing information. *Id.* at 786. But crucially, the plaintiff also alleged this information was *anonymous*. *Id.* at 786–87 ("While Popa also alleges that a user's mailing address is captured when entered for delivery information, the screenshot produced in the complaint indicates that masking software . . . omitted the street number and zip code.").

In other words, *Popa* concerned a third party collecting anonymous browsing information that was used to troubleshoot technical issues. It is unsurprising that the Ninth Circuit found standing was lacking.

## II. PLAINTIFF'S ALLEGATIONS INVOLVE PERSONALLY IDENTIFIABLE INFORMATION USED FOR PROFILING AND ADVERTISING

The allegations here stand in stark contrast to *Popa*. To start, Plaintiff alleges that Meta collected his hotel booking information and Facebook ID, which is more than sufficient to personally identify Plaintiff. *See* Complaint, ECF No. 1 ("Compl.") ¶¶ 53, 63–66; *see also Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *9 (N.D. Cal. Sept. 16, 2025) ("'Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII.'") (quoting *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (collecting cases)). This is because a Facebook ID, without more, allows "any ordinary person [to] look up the user's Facebook profile and name." Compl. ¶ 53. Further, the California Legislature classifies "[i]dentifiers," including "unique personal identifier[s], online identifiers, . . . or other similar identifiers" as "personal information" because such identifiers are "reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(v)(1)(A). The Facebook ID squarely fits the statutory definition for "personal information." *See* Compl. ¶ 53 (explaining that a Facebook ID "is a unique and persistent identifier"). As such, all hotel booking information—*i.e.*, location, hotel name, dates of stay, number of guests, etc.—was attributable to Plaintiff. *See id.* ¶¶ 8, 37, 52, 64, 85.

Accordingly, unlike in *Popa*, the information sent to the third parties was *not* anonymous.[1] Even before *Popa*, courts distinguished cases involving anonymized browsing information from those where personally identifiable information was collected. *See*, *e.g.*, *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 951 (N.D. Cal. 2023) (finding standing where "Plaintiffs have made allegations indicating that the information collected was not anonymized," and distinguishing session replay case where "the data captured was anonymized").

Moreover, Plaintiff alleges that Meta uses Plaintiff's personally identifiable information to "analyze and generate reports," and "create custom audience sets that can be shared with other advertisers" for marketing and advertising purposes. Compl. ¶ 46. In other words, Meta uses the information it collects to build profiles of its users within its own systems, allowing prospective advertisers to target users based on the information Meta collects.

Using Plaintiff's information to compile comprehensive, non-anonymous user profiles that are then disseminated to advertisers or across social media platforms without consent suffices for Article III standing purposes, as courts have found since *Popa*. *See, e.g.*, *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (finding that defendant's alleged "profile-building practices" were "materially more invasive" than the allegations in *Popa* and therefore "sufficient to plead an injury conferring Article III standing"); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *3 (N.D. Cal. Jan. 12, 2026) (holding that alleged "data collection and the creation of user profiles" was "materially more invasive than . . . in *Popa*"); *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *1, (N.D. Cal. Sept. 30, 2025) (stating that "*Popa* confirmed that *Facebook* remains good law" and, as such, allegations of "internet trackers allow[ing] third parties to generate profiles" of users "satisfies the requirements of *Popa*."); *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) (finding allegations of disclosures of the plaintiff's "private information—*e.g.*, timestamped geolocation information . . . and products placed in their cart" among others was "sufficient to allege a concrete privacy harm analogous to those actionable under common

[1] Whether Plaintiff's standing depends on if the information collected is identifiable, is a question of fact not suitable for resolution at this juncture. *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *3–4 (N.D. Cal. Mar. 28, 2025).

law privacy torts."); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) ("Gabrielli's allegations that Haleon deprived him control of personal information regarding his digital activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing."); *see also de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) (holding that "*Popa* . . . does not support dismissal" because plaintiffs alleged "that [d]efendants' cookies scooped up their historical data and information about where [p]laintiffs came from via referring URLs.").

In addition, "California law recognizes 'an entitlement to unjustly earned profits,' to establish standing." *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). Thus, Plaintiff may also have standing based on the benefit he conferred on Defendant vis-à-vis Defendant enabling Meta to collect and use Plaintiff's information for advertising purposes or to improve their products. *See Greenley*, 684 F. Supp. 3d at 1038 (Article III standing alleged where "Plaintiff … conferred a benefit on Defendant through the use and dissemination of Plaintiff's . . . personal information . . . which Defendant used and disseminated for its own monetary benefit") (cleaned up).

## III. LOSING THE RIGHT TO CONTROL THE DISSEMINATION OF PERSONAL INFORMATION REMAINS A CONCRETE INJURY

Also lacking from *Popa* was what specific privacy harm the plaintiff alleged she incurred. Plaintiff does not have that problem here: Defendant's conduct caused Plaintiff to suffer the loss of the right to control the dissemination of his personal information. This is the right the CIPA was enacted to protect against. *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) ("[S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements."). It is a right encompassed within "both the common law and the literal understandings of privacy." *U.S. Dep't of Just. v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989); *see also Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference") (cleaned up); *Camplisson*, 2025 WL 3228949, at *6 ("More specifically, this right 'econmpass[es]

the individual's control of information concerning his or her person.'") (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). And it is the violation of this right the Ninth Circuit found sufficient to give rise to Article III standing. *See In re Facebook*, 956 F.3d at 598 ("A right to privacy encompasses the individual's control of information concerning his or her person … [T]he legislative history and statutory text demonstrate . . . the California legislature intended to protect these historical privacy rights when they passed the … CIPA.") (cleaned up). "That holding remains good law after the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)." *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107 n.4 (N.D. Cal. 2025); *see also Popa*, 2025 WL 2448824, at *8 ("[W]e need not revisit … *In re Facebook* in reaching our decision today."). This is consistent with other federal circuit courts in similar privacy cases. *See, e.g.*, *Salazar v. National Basketball Association*, 118 F.4th 533, 537 (2d Cir. 2025) ("Salazar has pled an injury that confers Article III standing. His core alleged harm—that his personal information was disclosed to a third party, without his consent, . . . has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts . . .") (cleaned up); *Salazar v. Paramount Global*, 133 F.4th 642, 648 (6th Cir. 2025) ("Salazar's asserted injury resembles the harms addressed by these torts because he alleges that Paramount disclosed his private information to Facebook without his knowledge or consent.").

To be clear, this right was *not* violated in *Popa* where the information was not identifiable. *See James*, 701 F. Supp. 3d at 949 ("[T]he Court agrees that a privacy claim is dependent on personal information being implicated."). It is violated when, like here, the information collected identifies Plaintiff, is used to build a comprehensive profile of Plaintiff, and that profile is disseminated to even further third parties without consent. *See, e.g.*, *Deivaprakash*, 798 F. Supp. 3d at 1106–1107; *Gabrielli*, 2025 WL 2494368, at *6.

## IV. CONCLUSION

For the foregoing reasons, *Popa* is distinguishable. Plaintiff's allegations are sufficient to confer Article III standing.

Dated: January 22, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*